UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

KELLYANN MCKENZIE,

Plaintiff,

-against-

PERRIGO,

Defendant.

-----------------------------------------------------------x

22 Civ. 8720 (AEK)

**DECISION AND ORDER**

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

Plaintiff Kellyann McKenzie ("Plaintiff"), proceeding *pro se*, initiated this action in the Supreme Court of the State of New York, County of Westchester, on July 15, 2022 against Perrigo Company ("Defendant"), asserting that she sustained injuries as a result of using Defendant's "ScarAway" product. *See* ECF No. 6, Ex. A.[2] Defendant removed the case to this Court on October 13, 2022. ECF No. 6. Currently before the Court is Defendant's motion for summary judgment. ECF Nos. 75-79. For the reasons set forth below, Defendant's motion is GRANTED.

---

[1] On January 31, 2025, the Honorable Philip M. Halpern endorsed and docketed a fully executed Form AO 85, "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge," in which the parties consented to the reassignment of this matter to a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). ECF No. 48. This matter was then reassigned to the undersigned.

[2] In her original complaint in state court, Plaintiff referred to Defendant as "Scar Away/Perrigo." *See* ECF No. 6, Ex. A. On November 2, 2022, Plaintiff filed an amended complaint, in which she referred to Defendant only as "Perrigo." *See* ECF No. 11; *see also* ECF No. 28 (Second Amended Complaint).

## BACKGROUND

### I. Factual Background

The facts set forth in this section are undisputed unless otherwise noted and are taken from Defendant's Local Civil Rule 56.1 Statement, ECF No. 78 ("Def.'s 56.1 Statement"), the supporting exhibits submitted by Defendant, and the portion of Plaintiff's submission in response to the motion labeled as a "statement of material facts," *see* ECF No. 84 at 6-8[3] ("Pl.'s 56.1 Statement").[4]

Local Civil Rule 56.1 of the Joint Local Rules of the United States District Courts for the Southern and Eastern Districts of New York mandates that "[t]he papers opposing a motion for summary judgment must include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Moreover, "[e]ach statement by the movant or opponent under [Local Civil] Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d). This requirement extends to a *pro se* plaintiff who has been provided with proper notice of this obligation pursuant to Local Civil Rule 56.2, as Plaintiff was here. *See* ECF No. 77; *Cain v. Esthetique*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016). Under

---

[3] All references to page numbers from Plaintiff's opposition submission are to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

[4] Plaintiff's submission in response to the motion is a single document that appears to combine a "notice" (pp. 1-2), a declaration (pp. 2-3), a legal argument (pp. 3-6), the "statement of material facts" (pp. 6-8), and a certificate of service (pp. 10-11).

Local Rule 56.1, "[i]f the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003).

Plaintiff's "statement of material facts" does not comply with the requirements of Local Civil Rule 56.1. First, Plaintiff's statement does not admit or deny or otherwise respond to the facts set forth in Defendant's 56.1 Statement on a paragraph by paragraph basis, as required by Local Civil Rule 56.1(b). Second, when Plaintiff offers additional material facts in her statement, she does not include citations to admissible evidence, as required by Local Civil Rule 56.1(d). Nevertheless, the Court has exercised its "broad discretion to determine whether to overlook a party's failure to comply with local court rules," and has opted to "conduct an assiduous review of the record," including consideration of Plaintiff's "statement of material facts," for purposes of deciding the instant motion. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted).

**A. July 27, 2019 Incident and Immediate Aftermath**

On July 27, 2019, Plaintiff sought treatment at a dermatologist's office in Bronxville, New York for injuries sustained during a fight with her boyfriend. Def.'s 56.1 Statement ¶ 3; Pl.'s 56.1 Statement ¶ 3; ECF No. 76 (Declaration of Morgan H. Durr ("Durr Decl.") Ex. B ("McKenzie Dep.") at 84:16-85:20. Plaintiff did not seek care at a hospital after the fight. McKenzie Dep. at 82:9-11. Plaintiff went to the office near closing time and did not have an appointment. Def.'s 56.1 Statement ¶ 4; Pl.'s 56.1 Statement ¶ 4; McKenzie Dep. at 85:21-25. Because the dermatologist was unable to see her without an appointment, Plaintiff spoke with the office staff instead. Def.'s 56.1 Statement ¶ 4; Pl.'s 56.1 Statement ¶ 4; McKenzie Dep. at 86:8-10. Plaintiff testified that she was "really adamant" that the office staff advise her as to what to

do about her injury. McKenzie Dep. at 87:7-88:2. A member of the office staff recommended that she try ScarAway sheets. Def.'s 56.1 Statement ¶ 5; McKenzie Dep. at 87:7-88:2.

ScarAway silicone scar sheets are FDA Class-1 medical devices for the treatment and reduction of scars; they contain medical grade silicone and are sold over-the-counter. Def.'s 56.1 Statement ¶¶ 1-2; Pl.'s 56.1 Statement ¶ 8; Durr. Decl. Ex. A ("Cices Rep.") at 6.[5]

Plaintiff purchased ScarAway at a CVS store in Fleetwood, New York on the evening of July 27, 2019. Def.'s 56.1 Statement ¶ 6; McKenzie Dep at 89:8-17. She did not do any independent research on the product or read the warnings or instructions on the box prior to applying the product to her face, nor did she seek any clinical guidance prior to purchasing the product. McKenzie Dep. at 88:18-21; 93:10-20; Pl.'s 56.1 Statement ¶¶ 7-8.

Plaintiff used the ScarAway product immediately after purchasing it on July 27, 2019. McKenzie Dep. at 94:6-13. While sitting in her car, she applied it directly to the injury under her right eye; she had it there for less than a minute. *Id*. at 94:6-13; 96:23-97:3; 98:20-99:6; Pl.'s 56.1 Statement ¶ 11. Plaintiff did not apply ScarAway to any other area of her face. McKenzie Dep. at 96:17-18; 100:12-18; Pl.'s 56.1 Statement ¶ 10.

Plaintiff reported that immediately after applying the product, she began to feel facial swelling. McKenzie Dep. at 94:17-19; 96:13-15 ("just something kind of attacking your face, that's how it felt."). Plaintiff "panicked" and "took the product right off [her] face." *Id.* at 97:6-7. She then consulted some friends who were working at a meat market in Mount Vernon, New York, and they advised her to wash the product off. *Id.* at 97:4-98:19. Plaintiff went into the bathroom of the market to wash her face with soap and water, but she testified that "it wouldn't

[5] All references to page numbers from the expert reports submitted by Dr. Ahuva Cices (Durr Decl. Ex. A) and Dr. Inna Kleyman (Durr Decl. Ex. C) are to the page numbers assigned by the ECF system.

come off"; she did not seek medical help at that time. *Id.* at 94:19-95:3; 97:6-10; Pl.'s 56.1 Statement ¶ 13. Plaintiff then fell asleep in her car. McKenzie Dep. at 95:4-5; Pl.'s 56.1 Statement ¶ 15.

Plaintiff testified that when she woke up, her face was swollen and red. McKenzie Dep. at 95:10-13; Pl.'s 56.1 Statement ¶ 16. She proceeded to go home. McKenzie Dep. at 106:4-10. At some point on July 28, 2019, Plaintiff purchased an unknown acetone-containing product from a Dollar Tree store and applied it to the outer portion of her right cheek, which she confirmed was not near the area of the scar.[6] *Id.* at 109:15-111:20. Plaintiff testified that no one had advised her to do this, but that she had conducted an internet search and determined "that was a way of kind of getting the silicone out." *Id.* at 110:4-8; Pl.'s 56.1 Statement ¶ 18. Plaintiff did not seek medical treatment on July 28, 2019. Def.'s 56.1 Statement ¶ 17; Pl.'s 56.1 Statement ¶ 17.

**B. Skin Symptoms**

On August 2, 2019, Plaintiff sought medical treatment from Hennessey Dermatology for evaluation of the scar on the right side of her face. Def.'s 56.1 Statement ¶ 19; Pl.'s 56.1 Statement ¶ 19; McKenzie Dep. at 109:7-14. She informed the medical provider that she used silicone gel scar sheets about a week earlier, and that this had caused severe irritation. McKenzie Dep. at 109:9-13. Plaintiff also informed the medical provider that she had applied acetone to her face, which she felt "may have burned the area even more." *Id.* at 109:15-19. The medical provider advised her not to put anything more on her face. *Id.* at 111:21-112:4. Plaintiff was diagnosed with a superficial wound abrasion, superficial burn, and hyperpigmentation, and was

[6] Plaintiff did not apply ScarAway to her right cheek, but she testified that "whatever was in it kind of like spread throughout my entire face . . . it not only spread through my face, and spread over my nose, it spread to this side, it spread all over." McKenzie Dep. at 100:12-23.

prescribed a topical cream and Vaseline. *Id.* at 113:2-12; Def.'s 56.1 Statement ¶ 20; Pl.'s 56.1 Statement ¶ 20. Plaintiff used the Vaseline, but did not use the prescribed cream because she "didn't want to put anything more on [her] face." McKenzie Dep. at 113:13-19; Def.'s 56.1 Statement ¶ 21; Pl.'s 56.1 Statement ¶ 21.

Plaintiff testified that at the time that she presented to Hennessey Dermatology on August 2, 2019, her face appeared "abnormal" and "defected in the sense where this whole portion . . . was scabbed over and sunken in." McKenzie Dep. at 114:1-13. Plaintiff believed that particles of the silicone from the ScarAway patch had been "absorb[ed]" by her skin and that the silicone "start[ed] traveling" to the other side of her face. *Id.* at 114:25-116:6. Plaintiff testified that she "could see it moving and [her] skin changing" on the left side of her face. *Id.* Plaintiff believed that she was having a reaction "because of the silicone," and that she was going to develop a scar. *Id.* at 114:16-115:5. Nobody, including at Hennessey Dermatology, told Plaintiff that there was silicone in her skin. *Id.* at 116:7-14.

On August 6, 2019, Plaintiff attended a follow up appointment at Hennessey Dermatology. *Id.* at 121:20-122:8. According to the medical record from that visit, Plaintiff reported a 75 percent improvement in her condition because the scab on the right side of her face was gone. *Id.* at 122:2-19. Plaintiff also testified that she was experiencing some hyperpigmentation on her face around the time of her follow up appointment with Hennessey Dermatology.[7] *Id.* at 125:18-24.

---

[7] According to Plaintiff, she experienced hyperpigmentation "on her right cheek and in front of her face." Pl.'s 56.1 Statement ¶ 24. Plaintiff asserts that "[a]lthough the hyperpigmentation on her right cheek was larger than that of the front of her cheek they both prevented her from leaving her home for eight months after the incident." *Id.*

Plaintiff sought treatment from Dr. Minh P. Thieu at Innovative Dermatology on September 7, 2019 regarding the hyperpigmentation on her face. Def.'s 56.1 Statement ¶ 24; McKenzie Dep. at 130:14-131:18. Dr. Thieu advised Plaintiff to stay out of the sun, and Plaintiff continued to use Vaseline but did not use any other topical medications. Def.'s 56.1 Statement ¶ 25; McKenzie Dep. at 134:22-25; 135:9-136:21.

Plaintiff testified that she did not seek any additional treatment for any injuries from the July 27, 2019 incident until February 2022. Def.'s 56.1 Statement ¶ 26; McKenzie Dep. at 140:16-21. During this period, she did not have any new issues with her skin and did not use any topical medications. McKenzie Dep. at 140:16-141:11. Plaintiff testified that during this period she was "healing" from "skin injuries," that she "consistently saw [her] skin change," and that "initially [her] skin was thin, and it got thicker, and thicker, and thicker." *Id.* at 141:2-143:3.

According to Plaintiff, in or about October 2019, she was told by Jephroy Thompson, M.D. of Westmoreland, Jamaica that silicone is difficult to remove from the skin. Pl.'s 56.1 Statement ¶ 22; McKenzie Dep. at 100:25-101:8. Plaintiff has not produced any medical records from any visit with Dr. Thompson, nor has she submitted an affidavit from Dr. Thompson in support of her claims. Plaintiff testified that no doctor ever told her that ScarAway caused the injuries she sustained; no healthcare provider ever told her that she had a chemical burn to her right cheek as a result of using ScarAway; no healthcare provider ever told her that she had nerve damage in her right cheek as a result of using ScarAway; and no mental health professional has ever told her that she experienced an aggravation of her bipolar disorder as a result of using ScarAway. Def.'s 56.1 Statement ¶¶ 30-31, 33; McKenzie Dep. at 189:10-190:4.

### C. Nerve Symptoms

Plaintiff testified that between September 2019 and February 2022, she was in "excruciating pain" from nerve damage. McKenzie Dep. at 142:12-18. On February 10, 2022,

Plaintiff visited Dr. Valery, her primary care physician, although she did not recall the specific purpose for the visit. Def.'s 56.1 Statement ¶ 27; McKenzie Dep. at 143:12-21. Dr. Valery prescribed a hydrocortisone cream that Plaintiff did not use, and referred her to a neurologist. McKenzie Dep. at 144:14-23; 145:17-25. On March 24, 2022, Plaintiff visited Dr. Eric Hanauer at Long Island Neurology Consultants; she told him that she was having pain in her face, and that she wanted to have "some imaging done to see what exactly was going on," but ultimately she did not have any imaging performed for facial nerve pain. *Id.* at 146:20-147:24; Def.'s 56.1 Statement ¶ 29.

Plaintiff testified that she continues to have nerve damage in her face, and that a doctor she saw in 2023 told her that she had damage to her trigeminal nerve. McKenzie Dep. at 190:5-23; Pl. 56.1 Statement ¶ 32. Plaintiff testified that she is not currently seeking treatment for her right cheek, seeing any healthcare providers, taking any medications or applying any topical treatments, or anticipating any surgeries or procedures. McKenzie Dep. at 190:21-191:8.

**D. Expert Evidence**

Defendant produced reports from two experts, both of whom opined that ScarAway cannot cause the injuries Plaintiff has claimed and that ScarAway did not cause Plaintiff's alleged injuries. Def.'s 56.1 Statement ¶¶ 36-37.

First, Dr. Cices, a board-certified dermatologist, concluded that "[t]here is no evidence or feasible scientific explanation of how short contact—in this case, less than a minute, as Plaintiff testified—with a silicone scar patch would damage the skin." Cices Rep. at 11. Dr. Cices went on to explain that it was her opinion that "there is no causal connection between Plaintiff's skin changes and her use of ScarAway. Instead, the skin changes were more likely caused by the traumatic injury she sustained in a fight with her boyfriend and the use of an acetone-based

product, which could have made the initial injury worse (particularly if there was an open wound at the time she applied ScarAway)." *Id.*

Second, Dr. Inna Kleyman, a board-certified neurologist, stated that "there is no objective evidence of nerve injury in [Plaintiff's] face. If [Plaintiff] did develop sensory symptoms in the face sometime between 2019 and 2022, those symptoms were not caused by her use of ScarAway, because . . . the symptoms did not appear immediately following her use of ScarAway." Durr. Decl. Ex. C ("Kleyman Rep.") at 5, 6. She added that "other causes of face pain . . . are not related to her initial skin injury that allegedly occurred on July 27, 2019 and would be in pursuit of a separate diagnosis unrelated to her use of ScarAway." *Id.* at 5.

Plaintiff did not serve expert disclosures by the April 11, 2025 deadline set by the Court in its February 3, 2025 scheduling order. *See* ECF No. 52. First by letter dated May 16, 2025, and then again in a joint submission dated May 23, 2025, Plaintiff requested additional time to locate an expert and provide an expert report. *See* ECF Nos. 57, 59. The Court granted that request on May 27, 2025, and gave Plaintiff until her requested deadline of June 23, 2025, while making clear that no further extensions would be granted. *See* ECF No. 60. Plaintiff did not serve any expert reports by the June 23, 2025 deadline. *See* ECF No. 66.

## II. Procedural History

The current operative pleading in this case is the Second Amended Complaint, which Plaintiff filed on February 21, 2023. ECF No. 28. In the Second Amended Complaint, Plaintiff alleges that as a result of Defendant's defective product, she suffered "silicone in the skin," "permanent nerve damage to right side of face," "alteration of facial appearance," "bumps on [right] side of face," and "diminished sense of smell." *Id.* at 6. Defendant moved to dismiss the Second Amended Complaint, ECF Nos. 25-27, but Judge Halpern denied the motion on September 14, 2023, finding that Plaintiff had sufficiently alleged, at that stage of the case, "that

she used ScarAway on her face and sustained facial injuries as a result of the product's defective manufacture," ECF No. 31 at 5. Defendant filed its answer to the Second Amended Complaint on October 5, 2023. ECF No. 32.

Defendant filed its motion for summary judgment and supporting papers on November 14, 2025. ECF Nos. 75-79. After receiving two extensions, Plaintiff filed her opposition to the motion on March 16, 2026. ECF No. 84. Defendant filed its reply on March 31, 2026. ECF No. 85.

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

### I. Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Dupree v. Younger*, 598 U.S. 729, 737 (2023). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (cleaned up); *see also Anderson*, 477 U.S. at 261 n.2. A party cannot overcome summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory allegations or denials . . . are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (cleaned up). Moreover, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge." *Rogoz v. City of Hartford*, 796 F.3d 236, 245-46 (2d Cir. 2015) (cleaned up). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000) (quotation marks omitted).

## II. Filings by *Pro Se* Litigants

In cases involving *pro se* litigants, on a motion for summary judgment, the court reads the submissions of the *pro se* party "liberally and interpret[s] them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks omitted). Nonetheless, application of this different standard "does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment." *Gunn v. Milani*, No. 20-cv-2681 (KMK), 2024 WL 4124319, at *7 (S.D.N.Y. Sept. 9, 2024) (cleaned up).[8]

# DISCUSSION

## I. Defendant's Motion for Summary Judgment

Defendant contends that because Plaintiff failed to offer admissible expert testimony that ScarAway is capable of causing the injuries she claims to have suffered or that ScarAway actually caused her injuries, summary judgment must be granted as to Plaintiff's products liability claim. ECF No. 79 at 8. The Court agrees.

[8] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), and Local Civil Rule 7.2 of the Joint Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database are being simultaneously mailed to the *pro se* Plaintiff along with this Decision and Order.

### A. Causation in Products Liability Actions

To succeed on a products liability claim, a plaintiff must prove that the defendant's product was a proximate cause of the plaintiff's injuries. *See Colwell v. Sig Sauer, Inc.*, 177 F.4th 382, 392 (2d Cir. 2026) ("a plaintiff must satisfy proximate causation to succeed in a products liability case"). Whether expert testimony is necessary to prove causation in a products liability case "turns on the facts of the case." *Id.* at 393. Depending on the circumstances, "[a] jury may be able to assess causation based on a consideration of the characteristics of the allegedly defective product and a witness's description of how the accident happened." *Id.* (cleaned up). But "[s]ome categories of products liability claims, such as those involving toxic exposures or pharmaceuticals, will almost always require expert testimony as to causation because those issues are far beyond the sphere of the ordinary juryman." *Id.* (cleaned up); *see also In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 311 (S.D.N.Y. 2016) ("Cases involving pharmaceuticals, toxins or medical devices involve complex questions of medical causation beyond the understanding of a lay person, and thus expert testimony is required." (cleaned up)), *aff'd*, 713 F. App'x 11 (2d Cir. 2017). In short, "[w]here a causal link is beyond the knowledge or expertise of a lay jury, 'expert testimony is required to establish causation.'" *Thomas v. C.R. Bard, Inc.,* No. 20-cv-2738 (CS), 2022 WL 16748753, at *4 (S.D.N.Y. Nov. 7, 2022) (quoting *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004)). "In a case such as this where there are complex medical issues, in order for plaintiff to prove that her alleged injuries were caused by [defendant's] products, she must introduce expert medical testimony establishing causation, because without it the jury is left to speculate on medical issues with which the average person is unfamiliar." *Id.* at *5 (cleaned up).

When expert testimony is required to establish causation in a products liability case, a plaintiff "generally 'must offer admissible expert testimony regarding both general causation

. . . and specific causation.'" *Id.* (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002)). "General causation means that the product can cause the injury, and specific causation means that the product in fact caused the injury in plaintiff's particular case." *Id.* at *4 n.3.

**B. Plaintiff Has Failed to Present Any Admissible Expert Evidence in Support of Her Theory of Causation**

"Rule 56(c) [of the Federal Rules of Civil Procedure] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, Plaintiff cannot show the existence of an element that is essential to her claim: causation. *See Daniels-Feasel v. Forest Lab'ys Inc.*, No. 17-cv-4188 (LTS) (JLC), 2021 WL 6137093, at *2 (S.D.N.Y. Dec. 29, 2021) (granting summary judgment in medical product liability case where plaintiff had no expert to prove causation), *aff'd sub nom. Daniels-Feasel v. Forest Pharms., Inc.,* No. 22-146, 2023 WL 4837521 (2d Cir. July 28, 2023). Accordingly, summary judgment is appropriate in favor of Defendant.

It is clear that this is a case that requires expert testimony to establish causation—whether Defendant's ScarAway product caused a reaction and chemical burn that resulted in permanent skin damage, alteration of Plaintiff's facial appearance, diminished sense of smell, and permanent nerve damage is not "within the ordinary experience of a lay person." *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d at 312. Thus, to succeed on her claim, Plaintiff would have to offer admissible expert testimony "that the product can cause the injury" and that "the product in fact caused the injury in plaintiff's particular case." *Thomas*, 2022 WL 16748753, at *4 n.3. Without competent medical expert testimony on the issue of causation, Plaintiff cannot

prove the elements of a strict products liability claim. *See Fane v. Zimmer, Inc.*, 927 F.2d 124, 132 (2d Cir. 1991); *Daniels-Feasel*, 2021 WL 6137093, at *2 ("courts will commonly grant summary judgment for the defense in medical product liability cases when the plaintiff cannot produce admissible expert testimony to show general causation.").

Plaintiff here has failed to provide any expert evidence on the issue of causation—she has not served any expert reports at all in this case, despite the Court having afforded her several extensions of time to do so. While Plaintiff alleges that she began experiencing symptoms in her face immediately after applying the ScarAway sheet, Plaintiff's own allegations do not provide sufficient proof from which a reasonable jury could conclude that Defendant's product caused her injuries. *See Thomas*, 2022 WL 16748753, at *6 ("[plaintiff's] allegations, on their own, are not evidence . . . from which a reasonable jury could conclude that [d]efendants' product caused his injuries"). Plaintiff maintains that a doctor in Jamaica advised her that silicone was "in her skin" and was "difficult to remove," *see* Pl.'s 56.1 Statement ¶ 22, but Plaintiff offers nothing but her own unsupported assertion that this communication ever took place, let alone any expert scientific conclusion linking Plaintiff's alleged medical conditions to her use of ScarAway. Similarly, while Plaintiff represents that a medical provider told her that she had "sustained damage to her trigeminal nerve after reading an [MRI] report of her upper back after a whiplash injury from a motor vehicle accident," Pl.'s 56.1 Statement ¶ 32, Plaintiff again offers only her own purported recollection of this discussion, and does not cite any evidence to support the notion that any such injury is attributable to the ScarAway product.

The absence of any expert evidence from Plaintiff is all the more glaring in light of the unequivocal statements from Defendant's experts, who have opined that: (1) "[t]here is no evidence or feasible scientific explanation of how short contact—in this case, less than a minute,

as Plaintiff testified—with a silicone scar patch would damage the skin," Cices Rep. at 11; (2) "there is no causal connection between Plaintiff's skin changes and her use of ScarAway," *id.*; and (3) "[i]f [Plaintiff] did develop sensory symptoms in the face sometime between 2019 and 2022, those symptoms were not caused by her use of ScarAway, because . . . the symptoms did not appear immediately following her use of ScarAway," Kleyman Rep. at 5, 6.

Finally, Plaintiff contends that that her credentials as an attendee of Westchester Community College, College of Westchester, Tidewater Community College, and Delaware County Community College, along with her status as a United States Navy veteran and Licensed Massage Therapist allow her to "draw reasonable conclusions to the chain of events that occurred pertinent to the skin injury on [her] face." ECF No. 84 at 3. This too is unavailing. Plaintiff cannot be considered an expert under Rule 702 of the Federal Rules of Evidence,[9] and her bare statements that ScarAway caused her injuries are not sufficient to overcome Defendant's summary judgment motion. *Fed. Trade Comm'n*, 913 F.3d at 305 ("conclusory allegations or denials . . . are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist" (cleaned up)). Whether or not Plaintiff "attest[s]" to the facts, *see* ECF No. 84 at 3, is irrelevant. Even considering Plaintiff's *pro se* status, "[s]etting forth legal conclusions more akin to a complaint's pleadings in a [portion of] a document identified by the misnomer ['declaration'] does not in some way magically transform

[9] Under Rule 702, the trial judge "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); Fed. R. Evid. 702 ("[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.").

such assertions into proof sufficient to clear the Rule 56 hurdle." *Montessi v. Am. Airlines, Inc.*, 935 F. Supp. 482, 487 (S.D.N.Y. 1996).

* * * * * * * * * *

Plaintiff's claim requires a showing that her injuries were caused by Defendant's product, and demonstrating causation in this case requires expert testimony. Because Plaintiff has failed to come forward with any expert evidence to support her claim, summary judgment in favor of Defendant is warranted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 75) is GRANTED.

The Clerk of Court is directed to enter judgement in favor of Defendant and to close this case.

Dated: August 25, 2026
White Plains, New York

**SO ORDERED.**

ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Decision and Order has been mailed by Chambers staff to the *pro se* Plaintiff at her address of record on the docket.